UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jessica Biczo, individually and on behalf of all others similarly situated, | 1:22-cv-01967 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ferrara Candy Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Ferrara Candy Company ("Defendant") manufactures, labels, markets, and sells caramel candy represented as "Made with Real Milk" and "Rich and Creamy," with a pitcher of milk under the Brach's Milk Maid brand ("Product").

### I.  INCREASE IN QUALITY CARAMELS

2. Over the past ten years, caramel has been one of the fastest-growing confectionery categories, with value sales increasing by five percent per annum.

3. That sales increases are double volume growth over the same period is reflective of caramel's premium category.

4. Consumer research group Mintel confirmed the increase in the number of new launches of higher-priced caramels while lower-priced caramel products are declining.

5. Part of the premiumization of caramel products is based on the presence of high quality ingredients, from dairy sources, as opposed to vegetable fats like palm oil.

6. During this period, Defendant began marketing its caramels as "Made With Real Milk."







7. The representations that the Product is "Made With Real Milk," and "Rich and Creamy," with a pitcher of milk, causes consumers to expect a non-de minims amount of milk fat.

8. However, the representations are false, deceptive, and misleading, because the fat content is exclusively from vegetable fat.

## II. WHAT IS CARAMEL

9. The quality of caramel depends on the amount and type of fat-contributing ingredients.

10. Britannica Dictionary defines caramel as a "light brown candy made from butter, sugar, and milk or cream."

11. Collins Dictionary defines caramel as "a chewy sweet food made from sugar, butter, and milk."

12. Cambridge Dictionary defines caramel as a "chewy sweet food made from sugar, butter, and milk."

13. Merriam-Webster defines caramel as a "firm, chewy, usually caramel-flavored candy made with sugar, cream, corn syrup, and butter."

14. Macmillan Dictionary defines caramel as a "candy made from sugar, butter, and milk."

15. Scholarly treatises confirm the definitions of mainstream dictionaries, describing "'Caramel candy, or 'caramel[s],'" as a "soft, dense, chewy candy made by boiling a mixture of milk or cream, sugar(s), glucose, butter, and [flavoring]."

16. Two model commercial formulations of caramel from a textbook on confectionery science contain fat ingredients based on dairy ingredients without vegetable fats.

|  | Commercial caramel (ungrained) | Caramelized sugar caramel |
|---|---|---|
| Water | 15–25 | 0 |
| Sucrose | 10–20 | 55–65 |
| Glucose syrup | 36–46 | 0–5 |
| Sweetened condensed milk/evaporated milk/milk powder | 20–40 | 0 |
| Cream | 0 | 25–35 |
| Butter | 5–15 | 6–12 |
| Salt | 0.2–0.5 | 0.2–0.5 |
| Vanilla | 0.1–0.3 | 0.1–0.3 |
| Lecithin | 0–0.4 | 0–0.4 |

17. Dairy fat ingredients contain hundreds of lactones, or aroma compounds, which contribute to taste receptors in the mouth.

18. Milkfat melts at mouth temperature (95°F) and is smooth.

19. Vegetable fats do not melt at mouth temperature and leave a waxy mouthfeel.

20. A study by a confectionery trade organization evaluated numerous caramel formulations with no differences in acceptability between eight and sixteen percent milkfat.

21. Only when the milkfat was completely replaced with vegetable fats was the flavor judged by participants to be significantly lower.

22. The substitution of milk fat with vegetable fats reduces cost, but results in a product which provides less satiety.

23. In contrast to fats from dairy ingredients which contains vitamins and nutrients, vegetable oils lack nutrients and vitamins, and are linked to health problems, like increased chances of heart disease and increased cholesterol.

**III.  REPRESENTATIONS ABOUT MILK CONTENT**

24. The representations include the statements, "Rich and Creamy Caramels Made with

Real Milk," "Made with Real Milk," and a pitcher of milk.



25. Consumers purchasing caramels will expect the references to "real milk" and refers to whole milk, because fat ingredients are central to caramel.

26. Between the various kinds of milk, whole milk has the highest amount of fat, at 3.25%, as opposed to skim or nonfat milk, with no fat.

27. Consumers purchasing caramels will expect the description, "Rich and Creamy,"

5

refers to dairy ingredients containing milk fat, as these adjectives are associated with such ingredients.

28. However, the representations that the Product is "Made with Real Milk," and "Rich and Creamy" are false, deceptive and misleading, because the fat content is entirely from vegetable fat in the form of "Hydrogenated Palm Kernel Oil," the third most predominant ingredient.

**INGREDIENTS:** CORN SYRUP, SUGAR, HYDROGENATED PALM KERNEL OIL, SKIM MILK, BUTTERMILK, WHEY, CALCIUM CARBONATE, SALT, ARTIFICIAL FLAVORS, LIPOLYZED BUTTER OIL, MOLASSES, POTASSIUM SORBATE (PRESERVATIVE).

29. While the ingredients include milk, these are skim milk and buttermilk.

30. Skim milk has less than 0.1% fat, and buttermilk is less than 0.5% fat.

31. Though the Product contains whey, this dairy ingredient is almost entirely protein, which provides structure.

32. Whey is added for cost savings over more expensive milk fat ingredients.

33. It is false, deceptive and misleading to substitute the most valuable component of milk, milk fat, with lower cost vegetable oils.

34. This practice was common in the early 20th century, when companies removed milkfat from milk and replaced the fat portion with vegetable oil, equivalent to the combination of skim milk and palm oil used in the Product.

35. This combination was called "filled milk," which cost less than regular milk,

enriching suppliers at the expense of consumers.

36. Congress prohibited filled milk as deleterious to public health and deceptive to consumers.

37. The Product lacks the nutritive, sensory, organoleptic, and other attributes expected from a product identified as "Caramel" that is "Made with Real Milk," and described as "Rich and Creamy."

38. Other products represented as caramel which promote the presence of dairy ingredients contain ingredients with milk fat, such as butter, cream, and whole milk.

39. This causes consumers to expect Defendant's Product is equivalent to competitors in quality, even though it is not.

40. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

41. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

42. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

43. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

44. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

45. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $4.39 per 10 OZ, excluding tax and sales,

higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

46. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

47. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

48. Plaintiff Jessica Biczo is a citizen of Illinois.

49. Defendant Ferrara Candy Company is an Illinois corporation with a principal place of business in Chicago, Cook County, Illinois.

50. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

51. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

52. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

53. Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in DuPage County, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

54. Plaintiff Jessica Biczo is a citizen of Carol Stream, DuPage, Illinois.

55. Defendant Ferrara Candy Company is an Illinois corporation with a principal place of business in Chicago, Illinois, Cook County.

56. Brach's company was founded in Chicago in 1904 by Emil J. Brach, who invested his $1,000 life savings in a storefront candy store with a single kettle.

57. Operated as a family business, Brach's never compromised on quality ingredients, especially when it came to the company's main product – caramels.

58. Emil Brach's mantra was to be honest with customers, selling quality products at fair prices.

59. The Brach's candy company grew for decades under the leadership of the Brach family.

60. Eventually, Brach's was sold to the multinational Ferrara Candy Company.

61. Consumers trust the Brach's brand, because they have grown up with their confections, from chocolate, to candy corn, to caramel.

62. Consumers know that candy is not a "healthy" product, but an indulgence.

63. However, consumers prefer higher quality ingredients like dairy ingredients with milk fat over vegetable fats.

64. to be honest with them, because it has built up a reservoir of good will based on its practices and quality.

65. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

66. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Jewel-Osco, 750 Army Trail Rd, Carol Stream, IL 60188 between October 9, 2021, and December 9, 2021, and/or among other times.

67. Plaintiff believed and expected the Product contained milk ingredients which contained milk fat because that is what the representations and omissions said and implied.

68. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

69. Plaintiff bought the Product at or exceeding the above-referenced price.

70. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

71. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

72. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

73. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

74. Plaintiff is unable to rely on the labeling and representations not only of this Product,

but other similar caramels and confections containing caramel, because she is unsure whether those representations are truthful.

## Class Allegations

75. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Iowa, Wyoming, Texas, Nebraska, South Dakota, West Virginia, Utah, Idaho, Alaska, and Montana who purchased the Product during the statutes of limitations for each cause of action alleged.

76. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

77. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

78. Plaintiff is an adequate representative because her interests do not conflict with other members.

79. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

80. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

81. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

82. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

83. Plaintiff incorporates by reference all preceding paragraphs.

84. Plaintiff believed the Product contained milk ingredients which contained milk fat.

85. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

86. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

87. Plaintiff relied on the representations and omissions to believe the Product contained milk ingredients which contained milk fat.

88. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

89. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

90. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

91. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

92. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

93. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

94. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained milk ingredients which contained milk fat.

95. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

96. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

97. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained milk ingredients which contained milk fat.

98. Defendant's representations affirmed and promised that the Product contained milk ingredients which contained milk fat.

99. Defendant described the Product so Plaintiff and consumers believed it contained milk ingredients which contained milk fat, which became part of the basis of the bargain that it would conform to its affirmations and promises.

100. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

101. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high quality products.

102. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

103. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

104. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

105. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

106. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

107. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it contained milk ingredients which contained milk fat.

108. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained milk ingredients which contained milk fat, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

109. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

110. Defendant had a duty to truthfully represent the Product, which it breached.

111. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products.

112. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

113. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

114. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

115. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

116. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

117. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained milk ingredients which contained milk fat.

118. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

119. Defendant knew of the issues described here yet did not address them.

120. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

121. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: April 16, 2022

Respectfully submitted,

16

                                       /s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com